UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| TYWON SWANSON, <br><br> Plaintiff, <br><br> vs. <br><br> CAROLYN W. COLVIN, <br> COMMISSIONER OF THE SOCIAL <br> SECURITY ADMINISTRATION, <br><br> Defendant. | Case No. 1:13-cv-01194-TWP-TAB |

## ENTRY ON JUDICIAL REVIEW

Plaintiff Tywon Swanson ("Mr. Swanson") requests judicial review of the final decision of the Commissioner of the Social Security Administrator (the "Commissioner"), denying his application for Disability Insurance Benefits ("DIB") and Supplemental Insurance Benefits ("SSI") under Titles II and XVI of the Social Security Act ("the Act"). For the following reasons, the Court **AFFIRMS** the Commissioner's decision.

### I. BACKGROUND

#### A. Procedural History

Mr. Swanson filed his applications for DIB and SSI on May 25, 2010, alleging a disability onset date of April 2008. Thereafter, on December 6, 2010, Mr. Swanson requested a hearing. On December 16, 2011 there was a hearing before Administrative Law Judge Stephen E. Davis (the "ALJ"), where Mr. Swanson (represented by counsel) and his father testified. On February 24, 2012, the ALJ denied Mr. Swanson's applications and, on May 31, 2013, the Appeals Council denied Mr. Swanson's request for review of the ALJ's denial, thus making it

the final decision of the Commissioner for the purposes of judicial review. 20 C.F.R. § 416.1481. On July 26, 2013, Mr. Swanson filed this appeal requesting judicial review pursuant to 42 U.S.C. § 405(g) and 1383(c)(3).

### B. Factual and Medical Background

At the time that the of his alleged onset date, Mr. Swanson was twenty-four years old and twenty-seven years old at the time of his hearing. Mr. Swanson completed the 12th grade and did not attend special education classes. ([Filing No. 13-6 at ECF p. 12](#)). He has previously worked as a truck loader and a security guard in the time period from 2005-2008.

In early September 2008, or five months after the onset of the alleged disability, Mr. Swanson suffered an injury to the elbow of his left, non-dominant arm. He was admitted to St. John's Hospital, where X-ray scanning confirmed Mr. Swanson had sustained a "comminuted fracture" of his left distal humerus (upper arm bone). After his left arm was splinted, Mr. Swanson left and returned a week later to undergo an open reduction and internal fixation of the comminuted fracture. Mr. Swanson was discharged and instructed to follow up with physicians in seven to fourteen days. No follow up care related to the surgery was sought.

In July 2010, Mr. Swanson was presented by the state agency to Timothy Shoemaker, M.D., for a physical consultative exam pursuant to his claim. Though Mr. Swanson claimed disability secondary to migraine headaches, dizzy spells, blackouts, blurry vision and rods and pins in his left arm, he explained to Dr. Shoemaker that he had not been evaluated by his primary care doctor for any of the above. Mr. Swanson subjectively indicated that the pain in his left arm was constant and worsened with activity.

Dr. Shoemaker's physical exam revealed that Mr. Swanson had no signs of cyanosis, clubbing or edema, that pulses were present in all four extremities, and that there were no

varicosities or ulcerations. Mr. Swanson was alert and oriented times three, had a normal posture and gait, and had no difficulty getting on and off the examination table. The musculoskeletal portion of the exam revealed that his active and passive ranges of motion were within normal limits, he was able to stand on heels and toes, as well as tandem walk, hop, and squat. The exam also revealed that Mr. Swanson had appropriate gait and station, which was dually noted by Dr. Paul J. Roberts, M.D., during a psychological evaluation a month earlier. Dr. Roberts also documented in his evaluation that Mr. Swanson did not utilize any assistive devices, had coordinated gross and motor movements, and no observable difficulties with balance or coordination.

During the psychological evaluation administered in June 2010 by Dr. Roberts, Mr. Swanson's chief complaints for disability were frequent dizzy and fainting spells, along with the rod and pin placement in his left humerus. He also reported persistent, daily migraine headaches. Mr. Swanson stated that he had no previous employment, but, as Dr. Roberts noted, his account was inconsistent with the submitted Social Security paperwork. Mr. Swanson also reported that, in terms of daily living activities, he was cognitively capable, but physically incapable, of performing them.

Dr. Roberts administered a comprehensive mental status examination and concluded that, from a neurocognitive standpoint, Mr. Swanson appeared to be of lower cognitive functioning. Mr. Swanson answered "I don't know" to most of the questions and Dr. Roberts noted concern that Mr. Swanson made "no attempts" to guess at a possible response to questions posed. The exam revealed that Mr. Swanson lacked the presence of any auditory and/or visual hallucinations, did not respond to any internal stimuli, and had an affect that both was appropriate for the subject and setting and was normal and stable. His thought pattern was

unremarkable, and without any evidence of delusions. During the exam, Mr. Swanson was alert and oriented times three. He also had fair attention and sustained concentration, had intelligible, appropriate, purposeful and goal-directed speech, and also had no display of any anti-social behaviors.

At the conclusion of the exam, Dr. Roberts opined that, despite the fact that claimant may benefit from further cognitive assessment, Mr. Swanson did not present any noteworthy psychopathology from a psychiatric standpoint and his presentation and behaviors did not appear to meet the criteria for any major psychiatric disorder. Furthermore, Dr. Roberts concluded that Mr. Swanson's psychiatric status would not be an obstacle to obtaining gainful employment.

In September 2010, state agency reviewing psychologist Donna Unversaw, Ph.D. reviewed the record and noted in a prior application for benefits the previous year, Mr. Swanson had no mental impairment allegations and reported that he had no problems with hygiene, dressing, or bathing: was able to cook simple meals, do laundry, mow the lawn, shop and care for his young daughter. Dr. Unversaw opined that Mr. Swanson had no medically determinable mental impairment and that his complaints were not credible. In October 2010, state agency reviewing psychologist Joelle J. Larsen, Ph.D., affirmed Dr. Unversaw's assessment.

In April, 2011, Dr. Leny Phillip, M.D., assessed Mr. Swanson as having unspecified backache, anxiety, depressive disorder, and unspecified epilepsy without mention of intractable epilepsy. Dr. Phillips treatment history was limited to one visit.

At his hearing, Mr. Swanson testified that he stopped working because he could not stand on his feet for long periods of time and he had passed out at work. He experiences headaches, whole body pain and extreme incontinence of both his bladder and bowels. However, Mr. Swanson did not take any medication or treat with a physician for any of his conditions because

4

he could not afford it. According to his father, he believed Mr. Swanson did not wear diapers because he was ashamed.

### C. The ALJ's Decision

The ALJ made the following findings as part of his decision. At step one, the ALJ determined that Mr. Swanson has not engaged in substantial gainful activity since April 6, 2008. At step two, the ALJ found that Mr. Swanson has no medically determinable impairments, due to the absence of medical signs or laboratory findings to properly substantiate their existence. The ALJ concluded that the claimant had not been under a disability, from April 6, 2008 through the date of the decision, under 20 C.F.R. 404.1520(c) and 416.920(c), and did not continue to consider the subsequent steps in determining disability.

## II. <u>DISABILITY STANDARD OF REVIEW</u>

Under the Act, a claimant is entitled to DIB or SSI if the claimant establishes a disability, defined under 42 U.S.C. § 423(d)(1)(A) as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . . which has lasted or can be expected to last for a continuous period of not less than twelve months. Under the authority of the Social Security Act ("SSA"), the Social Security Administration ("the Administration") has established a five-step sequential evaluation process for determining whether an individual is disabled. 20 C.F.R. §§ 404.1520 and 416.924. The steps are followed in order. If disability status can be determined at any step in the sequence, the application will not continue to the next step. *Id*.

At step one, if the claimant is currently engaged in substantial gainful activity ("SGA"), then the claimant is not found to be disabled, regardless of the severity of his or her physical or mental impairments, and regardless of age, education and work experience. 20 C.F.R. §§

5

404.1520(b) and 416.920(b). If the individual is not engaged in SGA, the analysis proceeds to the second step.

At step two, if the claimant's medically determinable impairments are not severe, then he or she is not found to be disabled. 20 C.F.R. § 404.1520(a)(4)(ii). A "severe" impairment within the meaning of the regulations is one that "significantly limits an individual's ability to perform basic work activities." 20 C.F.R. §§ 404.1520(c) and 416.924(c). An impairment is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.1520(c) and 416.924(c); *see also* SSR 85-28; SSR 96-3p; SSR 96-4p. If the individual has a severe impairment or combination of impairments, the analysis proceeds to the third step.

At step three, if the claimant's impairment, either singly or in combination, meets or medically equals the criteria for any of the impairments listed in 20 C.F.R. § 404, Supbart P, Appendix 1, and meets the duration requirement, 20 C.F.R. §§ 404.1509 and 416.909, then he or she is found to be disabled. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, and 416.920(d). If it does not meet any of the listed impairments, the analysis proceeds to the next step.

Before considering the fourth step, the claimant's residual functional capacity ("RFC") is determined. 20 C.F.R. §§ 404.1520(e) and 416.920(e). An individual's RFC is his or her ability to do physical and mental work activities on a sustained basis despite limitations from impairments. *See* 20 C.F.R. §§ 404.1545 and 416.945. All of the claimant's impairments, including impairments that are not severe, are considered in finding the RFC. 20 C.F.R. §§ 404.1520(e) and 404.1545; *see also* SSR 96-p.

At step four, if the claimant has the RFC to perform his or her past relevant work, then the claimant is not found to be disabled. 20 C.F.R. §§ 404.1520(f) and 416.920(f). If the claimant is unable to do any past relevant work or does not have any past relevant work, the analysis proceeds to the fifth and last step.

At the last step of the sequential evaluation process, if the claimant, given his or her RFC, age, education and work experience, is able to do any other SGA which exists in that national economy, then he or she is not found to be disabled. 20 C.F.R. §§ 404.1520(g), 404.1560(c), 416.920(g). Although the claimant continues to have the burden of proving disability at this step, a limited burden is shifted to the Commissioner at this step to prove evidence that demonstrates other work exists in significant numbers in the national economy that the claimant can do. 20 C.F.R. §§ 404.1512(g), 404.1560(c), 416.912(f); *see also Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992).

The SSA provides for judicial review of the Commissioner's denial of benefits. 42 U.S.C. § 405(g). When the Appeals Council denies review of the ALJ's findings, the ALJ's findings become those of the Commissioner. *See Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999). The findings of the Commissioner "as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g); *Powers v. Apfel*, 207 F.3d 431, 434 (7th Cir. 2000). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

The limited role of the Court on judicial review under 42 U.S.C. § 405(g) is to determine whether there is substantial evidence in the entire record to support the fact findings or decision of the ALJ, as the trier of facts. This Court must review the entire record, *Arkansas v. Oklahoma*, 503 U.S. 91, 113 (1992), and sustain the ALJ's findings if it finds "such evidence as a reasonable

mind might accept as adequate to support a conclusion," *Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995) (quoting *Perales*, 402 U.S. 389). Since the Commissioner is responsible for weighing the evidence, resolving conflicts and making independent findings of fact, *see Perales*, 402 U.S. at 399–400, a reviewing court may not decide the facts anew, re-weigh the evidence or substitute its own judgment for that of the Commissioner to decide whether a claimant is or is not disabled, *Powers*, 207 F.3d at 434. A court must affirm the agency's factual findings even if the court believes that substantial evidence would support alternative findings. *Arkansas*, 503 U.S. 91.

Though the ALJ's decision must be "based upon consideration of all the relevant evidence," *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994), it "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). Rather, at the very minimum, the ALJ's discussion must "confront evidence that does not support his conclusion and explain[n] why it was rejected." *Kasarsky v. Barnhart*, 335 F.3d 539, 543 (7th Cir. 2003). In this manner, the ALJ must provide a path of reasoning, with evidence that leads logically to his conclusion. *Rohan v. Chater*, 98 F.3d 966, 971 (7th Cir. 1996).

### III. <u>DISCUSSION</u>

In his appeal, Mr. Swanson raises three issues. First, he argues that the ALJ's step two determination was not supported by substantial evidence because the ALJ selectively ignored or rejected evidence that proved the existence of Mr. Swanson's severe impairments. Second, he argues that the ALJ improperly failed to summon a medical advisor to testify whether Mr. Swanson's combined mental impairments equaled any impairments listed under 20 C.F.R. § 404, Subpart P, Appendix 1. Last, he argues that the ALJ's credibility decision was never properly made.

In contrast to Mr. Swanson's objections, the ALJ did support the step two finding with substantial evidence and provided a sufficient path of reasoning. Similarly, in resolving step three in this instance, the ALJ was not required to summon a medical advisor in order to determine medical equivalence. And in observing the inconsistencies scattered throughout the medical record, the ALJ properly evaluated Mr. Swanson's credibility.

### A. The ALJ Supported the Step Two Finding with Substantial Evidence

The Court finds there was substantial evidence to support the ALJ's decision of finding no severe impairments. To find a severe impairment or combination of impairments in step two, the impairment(s) must significantly limit the claimant's physical or mental ability to perform basic work activities for at least twelve consecutive months. *See* 20 C.F.R. §§ 404.1520(c) and 404.1521(a). In this case, no impairments, either physical or mental, that affected Mr. Swanson as such were medically determinable from the record. Basing his decision on all relevant evidence, the ALJ resolved step two to reflect that fact, and wrote a decision that led logically to finding against Mr. Swanson's disability.

#### i. Mr. Swanson had no severe physical impairments

Mr. Swanson argues that the ALJ, in ostensibly disregarding findings by Dr. Shoemaker on July 17, 2010, improperly found against Mr. Swanson's severe physical impairments relating to the left arm comminuted fracture. Since the ALJ did, in fact, include and discuss Dr. Shoemaker's "findings" regarding the arm and comminuted fracture, the argument does not persuade the Court. As revealed by the record, the statements by Dr. Shoemaker to which Mr. Swanson points are not medical determinations; rather, they are the doctor's observations about the subjective and self-reported symptoms made by Mr. Swanson, and are recorded in the "History of Present Illness" section. (*See* Filing No. 13-7, at ECF p. 41 ("Patient notes now that

he has constant pain in his upper arm that is worse with activity")). Dr. Robert's comments during the psychological exam on June 22, 2010 are the same in this respect.

Contrary to Mr. Swanson's urging, a claimant's subjective complaints of pain are insufficient to establish severe impairment. 20 C.F.R. § 404.1528(a) ("[S]tatements alone are not enough to establish that there is a physical or mental impairment."). By themselves, symptoms, like Mr. Swanson's pain, do not overcome the burdens of step two. *See* 20 C.F.R. § 404.1528(b) ("*Signs* are anatomical, physiological, or psychological abnormalities which can be observed, apart from your statements (symptoms)."). Because at this point in the ALJ's determination the existence of a medically determined impairment has yet to be established, Mr. Swanson still must produce medical and laboratory evidence in addition to his symptoms. *See* 20 C.F.R. §§ 404.1508("A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms.") and 404.1527(a) ("[I]mpairment must result from anatomical, physiological, or psychological abnormalities which are *demonstrable by medically acceptable clinical and laboratory diagnostic techniques*." (emphasis added)).

Without such evidence, the ALJ's finding that "claimant's left arm fracture did not last for 12 months," is proper and far from a misstatement. (Filing No. 13-2, at ECF p. 18). Contrary to Mr. Swanson suggestion, the passing of twelve months, coupled with subjective symptoms, signifies simply that Mr. Swanson "had Severe[sic] problems with his left arm for more than twelve months," (Filing No. 29, at ECF p. 3), and not that he necessarily suffered from a severe physical impairment contemplated by 20 C.F.R. § 404.1520(c). The evidence of normal muscle gait, range of motion, and fine and gross movements demonstrated by the four separate physical

examinations, (*see* Filing No. 13-7, at ECF pp. 3, 38, 42, 66), is adequate such that a reasonable mind could find that the fracture had not lasted the necessary twelve months.

In a nutshell, this Court affirms the ALJ's statement that "the scarcity of objective findings concerning the claimant's functional limitations and restrictions is noteworthy in this case." (Filing No. 13-2, at ECF p. 19). None of Mr. Swanson's other complaints of physical problems (including inability to lift and stand, dizziness, daily, persistent migraine headaches, unspecified backache, anxiety and depressive disorder) are confirmed by medical signs or laboratory findings. In the absence of these, substantial evidence supports the ALJ's step two determination against any severe physical impairment.

### ii. Mr. Swanson had no severe mental impairments

Mr. Swanson argues that the ALJ has again ignored findings, which prove the "rather marked impairment in [Mr. Swanson's own] mental functioning, apparently at the mental retardation level." (Filing No. 23, at ECF p. 12). Mr. Swanson alleges additionally that, as a result of this and other similarly "arbitrary" omissions, *see id.*, the ALJ failed to "build an accurate and logical bridge from the evidence to his conclusion," *id.* (quoting *Clifford v. Apfel*, 227 F.3d 863, 871 (7th Cir. 2009)), and instead opted to "play doctor and reach his own independent medical conclusion," *id.* (citing *Myles v. Astrue*, 582 F.3d 672, 677-678 (7th Cir. 2009)).

The Court disagrees. Far from failing to build an accurate and logical bridge, the ALJ discussed in great detail the psychological assessment of Dr. Robert, (Filing No. 13-2, at ECF p. 19), and in doing so, confronted adverse evidence and explained its rejection. *Cf. Kasarsky*, 335 F.3d at 543 (remanding an ALJ decision that "failed to provide any explanation for the rejection."). After citing in his decision several of the psychological signs and findings almost

11

verbatim, the ALJ went on to explicitly mention Dr. Robert's observation of Mr. Swanson's "lower cognitive function." (Filing No. 13-2, at ECF p. 19). Instead of disregarding it, as Mr. Swanson suggests, the ALJ weighed Dr. Robert's assessment against the concern about Mr. Swanson's various "I don't know" responses, devalued the former accordingly, and found in favor of the latter. *See id.* (noting that "Dr. Roberts assessed that . . . the claimant appeared to be of lower cognitive function; *however, he was concerned. . .*" (emphasis added)).

Furthermore, Mr. Swanson's other objections amply demonstrate that the ALJ, in the present case, did not "play doctor." Instead of making a finding from the lay testimony of Mr. Swanson's father, Leo Young, or weighing heavily the brief treatment history of Dr. Phillip, or even extrapolating gratuitously from Dr. Phillip's uncorroborated diagnosis, (Filing No. 13-7, at ECF p. 67 ("unspecified backache, depressive disorder, anxiety and unspecified epilepsy")), the ALJ appropriately considered each, noted them in the decision, and penned a "decision based on the record rather than on a hunch." *Wilder v. Chater*, 64 F.3d 335, 338 (7th Cir. 1995). Had he inserted or weighed heavily a medical opinion which does not exists or is unsubstantiated, then the ALJ would have incorrectly played doctor.

Instead, the ALJ considered the medical signs or laboratory findings provided by the record, and supported his decision sufficiently. He considered and discussed Dr. Roberts' medical opinion that, "from a psychiatric standpoint, the claimant did not appear to present with [sic] any noteworthy psycopathology." (Filing No. 13-2, at ECF p. 19). The ALJ followed this with Dr. Robert's two diagnoses, sharing that "the claimant's presentation and behaviors did not appear to meet the criteria for any major psychiatric disorder," as well that "his psychiatric status was not believed to be an obstacle to obtaining gainful employment." *Id.* Each of these findings by the medical doctor were "well supported by medically acceptable clinical findings," and were

"consistent with other substantial medical evidence of record," *id.*, such that the ALJ did not reach his own "independent medical conclusion." (Filing No. 23, at ECF p. 12 (citing *Astrue*, 582 F.3d at 677-678)). The ALJ's reliance on Drs. Unversaw and Larsen likewise substantiates this point. (*See* Filing No. 13-2, at ECF p. 20).

The Court also disagrees with the argument that the ALJ's choice in foregoing Dr. Phillip's recommendation constitutes a reversible error. This case differs from others where, because the ALJ failed to consider an entire line of evidence, courts have found that he had provided insufficient reasons. *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (citing *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 392 (7th Cir. 1992) (failure to discuss claimant's testimony, his wife's affidavits, or the reports of three doctors)). Presumably, had Mr. Swanson presented more objective, medical signs and laboratory findings, as was the case in *Young*, the ALJ would have considered them. In the absence of such, the ALJ has sufficiently supported his step two determination against any severe mental impairment.

### B. Resolving Step Three did not require a medical advisor

The Court agrees with Mr. Swanson that the issue of medical equivalence is a medical issue and must be based on medical opinion. (Filing No. 29, at ECF p. 6). However, when a medical impairment is absent, like in the present case, the question of equivalency is not considered. *See* 20 C.F.R. § 404.1520(a)(4)(ii). With this crucial feature missing, Mr. Swanson's reliance on *Barnett v. Barnhart*, 381 F.3d 664 (7th Cir. 2004), is unconvincing, as the existence of an impairment distinguishes this case from *Barnett*.

More importantly, no psychological medical expert was required at step two. (*See* Filing No. 26, at ECF pp. 12-13). Because in the present case neither (1) the "symptoms, signs and laboratory findings . . . suggest a judgment of equivalence may be reasonable," nor (2) any

"additional medical evidence [was] received that . . . may change the State agency medical or psychological consultant's finding," section 416.926(e) of the Code of Federal Regulations does not mandate that a medical advisor determine medial equivalence. *See* SSR 96-6p.

The Court is unconvinced by Mr. Swanson's suggestion that the May 6, 2011, physician evaluation conducted by Dr. Phillip constituted as additional medical evidence that would have changed the opinions of the agency's review physicians. Since Dr. Phillip's assessments were "inconsistent with other medical evidence of record" and "had not been supported by clinical or laboratory findings," his assessment of *unspecified* backache, *unspecified* anxiety, depressive disorder *that is not elsewhere classified*, and *unspecified* epilepsy did not mandate an updated, additional medical opinion. *Cf. Graves v. Astrue,* 1:11-CV-249-SEB-DKL, 2012 WL 4019533 (S.D. Ind. Sept. 11, 2012) ("[When] the *only psychological examination of record* was not reviewed by the state agency psychologists, the ALJ should have obtained an updated opinion as to the severity of the mental impairment and as to medical." (emphasis added)). The ambiguous assessment of "unspecified" findings does not, and cannot, avail the record at step three, if it does not pass muster at step two.

### C. The ALJ properly evaluated Mr. Swanson's credibility

An ALJ's credibility determination, as Mr. Swanson rightfully mentions, must "contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific." ([Filing No. 29, at ECF p. 7](Filing No. 29, at ECF p. 7) (quoting SSR 96-7p)). Mr. Swanson, however, wrongfully argues that such standard was not met in this case: the ALJ made an adverse credibility finding that was fully supported by the record.

Since the ALJ "is in the best position to determine a witness's truthfulness and forthrightness," *Skarbek v. Barnhart,* 390 F.3d 500, 504 (7th Cir. 2004), the Court defers to the

ALJ's credibility determination and will overturn it only if "patently wrong." *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013). Though the Court is allowed greater leeway to evaluate the ALJ's determination when a credibility finding rests on "objective factors or fundamental implausibilities," *Schomas v. Colvin*, 732 F.3d 702, 708 (7th Cir. 2013) (quoting *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004)), we are not allowed to reweigh the facts or reconsider the evidence, *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

The ALJ clearly draws upon several fundamental implausibilities in making his credibility determination. The "relatively infrequent trips to the doctor for the allegedly disabling symptoms," (Filing No. 13-2, at ECF p. 19), demonstrate the inconsistency in Mr. Swanson's position, as does the absence of a "medical history that suggests his complaints were chronic," *id*. The ALJ noted that Mr. Swanson's report of no employment was inconsistent with the social security paperwork which showed at least three distinctive places of employment. The ALJ, having noted such, was free to discount the applicant's testimony to the contrary on "the basis of the other evidence in the case." *Johnson v. Barnhart*, 449 F.3d 804, 805 (7th Cir. 2006). Thus, the Court cannot find that the ALJ's credibility determination was patently wrong.

## IV. CONCLUSION

For the Reasons set forth above, the final decision of the Commissioner is **AFFIRMED**. SO ORDERED.

Date: 8/19/2014

*(signature)*
Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Distribution:

Patrick H. Mulvany
patrick@mulvanylaw.com

Thomas E. Keiper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov